Your Honor, this is a... Can we get your name for the record? We're making a recording of the argument. Okay. My name is Ken Barish. I'm here on behalf of Defendant and Appellant Michael Levy. Thank you, sir. This is a situation which is unique. Clearly, there was a flaw in the sentencing process that occurred with regard to Mr. Levy. I'm sure you... I always laugh when you start off that way. It may be clear to you, but it apparently wasn't quite as clear to somebody else. Don't you think? Well, I guess to the judge it wasn't as clear, but if you look at the transcript and the argument, you'll... I hope you would say, and maybe the word clear is not the most articulate of words, but there's really strong evidence that the judge did not adhere to any of the procedural safeguards that were required in regard to the sentencing. He didn't analyze the 3553 factors. He basically... Didn't you waive your right to appeal that? There was a right to... Excuse me. There was a waiver of a right to appeal. That waiver of right to appeal, we believe, is null and void because of the way that things were done. And also there was a constitutional violation exception to that waiver, which we have argued very strongly in our paperwork concerning the violations, the cumulative nature of the violations being a due process right. Literally, we have a situation where this court, from the transcript, has nothing to look at in order to ascertain what was the basis for the sentencing other than some statements concerning the judge being very disturbed over AIG, economic crimes, thinking that Mr. Levy committed more than just a criminal tax crime. Why is that encompassed in your plea waiver? In your appeal waiver, I mean. I don't... Well, except for the procedural due process requirements and the fact that Mr. Levy did not receive the benefits of that plea agreement, I expect that the plea waiver holds. But understand... Well, excuse me. Under the plea agreement, he knew he could get 36 months. That's true. And under the guidelines, the guideline sentence was 36 months. As calculated by the pre-sentence report. Right. The judge never did a sentencing guideline calculation or a tax law calculation. In fact, he specifically said that he was not going to use the guidelines. When he started off in chambers with us... Had he used the guidelines, the sentence would have been 51 to 63. But the guidelines... He only got 36. The original issue that started this whole, I guess, series of events was whether or not the guidelines calculation was correct. In other words, the tax laws calculation was correct. And that was what we tried to propose many times to the court to consider. At one time, the judge even said that he would appoint a master to resolve that issue if there was a disagreement amongst the parties. We told him early on there was a disagreement among the parties with regard to that issue. And still he never applied, excuse me, he never appointed a referee or a mediator or an expert he said he would appoint. Was restitution ever in fact ordered? No. Did that ever get done? No. The judge recused himself during that last restitution hearing before the order was entered. It remained outstanding. The judge, as we articulated, instead of ordering restitution, said to us that we he was recusing himself, that the defense had won, the government had lost because it would no longer have him as the judge in this case. Counsel, that's not what he said. If you want to say the judge said it, you ought to be precise. The quotes in the record, what did the judge say? I quoted in our paperwork, but as far as I paraphrase it, it was that we said you had won. You can paraphrase if you say you're paraphrasing. But when you say the judge said, then you're suggesting that you're quoting. And if you quote, do it correctly. Okay. Would you like me to quote from our brief? We know what the records show. Oh, yes, of course. Here. But when he recused himself, that doesn't negate that he recused himself very emotionally. Very emotionally. And in response to a whole colloquy between the judge and the U.S. attorney about an ex-party communication that they had, and the judge's denial that it ever occurred, despite the fact that his clerk How many months had passed since the time he did what he did to the time he had the communication, if, as you say, he had it, and I suspect the record supports you that he did have it, but how much time had passed since? Between the Was it before or after he sent it to you? Oh, this was after. Three months after, wasn't it? Right, but the ex-party communication was only two days, I think, or three days before the hearing. But the significance of it, does the significance of it diminish when it happened after as opposed to if it had happened before? I submit, Your Honor, what it is, is it's an indication or further indication of the bias that he had against this particular defendant. Or his memory. Or his memory. For instance, when you started off, you said the court said. Well, the court didn't say what you said it said. It could just be his memory. He said he hadn't had the conversation. I know he said that. The record shows he said it. Right. And he had had it. Right. But that doesn't. It could be his memory, couldn't it? But it doesn't matter to us, does it? You tell us how it matters to us. I think it actually doesn't matter to you. I haven't put in our paperwork, but obviously there's a flaw here. And there's a reasoning process that has not worked. I don't want to characterize it in any specific way other than in legal terms. This conversation that he had was only two days before the hearing. Okay. That came to your attention when I gather Mr. Pry brought that to your attention. Mr. Preeby brought it to our attention. Did you then make a motion to have the judge disqualify? No, because he had set up a hearing for the next day. I was out of town. He set up the hearing for the, I think, two days hence. One of the concerns I have is if you find some misconduct on the part of the judge before the hearing, I don't see how you can then not make a motion to recuse the judge, but instead take a chance and see how it goes at the hearing. If it goes well, terrific. And if not, then you can complain about judicial misconduct of which you were already aware but chose not to raise. I don't know how you can do that. Well, that could be hindsight as 2020, Your Honor. At this point, we had a hearing scheduled on a restitution order where there shouldn't have been a hearing at all. I did bring it up during the hearing, and that started the series of events causing the judge to recuse himself. The judge did not recuse himself.   He did not recuse himself. He did not recuse himself. Not from my, I agree, my asking him to, but he did it on his own. I see you've got a minute. Yeah, I think I better wait. Thank you very much, Your Honor. Good morning. Good morning, Your Honor. May it please the Court, my name is Andrew Priebe, and I represent the United States. The record reflects the reasons why the judge entered the sentence he did. A full review of the record also indicates that there was no bias in this case. Consequently, the appeal should be dismissed. The Court stated its guideline determination in open court before the defendant. That guideline determination is 24. The only guideline range of 36 months because of the statutory maximum. The record reflects that the Court understood this. The court also specifically stated, this is a case for the first time in history that I'm looking at the guideline range above the statutory maximum. I've never seen that. He understood and applied the guideline range. The Court also stated, I think I do agree with the government on the guidelines. The Court also stated, the total pattern in my judgment is one that was calculated to avoid discovery, and I think it was done for that purpose. The Court understood the sophisticated means enhancement and rejected it, rejected the defendant's position on it, and accepted the government's position on it as well as the PSR. The Court stated this particular sentence was done under the statute primarily because I think it's a very dangerous and bad thing that you did what you did. This conclusion is consistent with the policy behind the guidelines and tax crimes. Those guidelines state tax offenses in and of themselves are serious offenses. However, a greater tax loss is obviously more harmful to the Treasury and more serious than a smaller one with otherwise similar characteristics. Let me fast forward a little bit. Please. You had the sentencing. The judge says, I'm going to set a restitution hearing some other time. Right? Yes. Somehow or another, you call the office to get a hearing scheduled, and while waiting for the clerk, the judge gets on the phone and starts talking to you about the case. Is that pretty much it? That's correct. And you felt duty-bound, and I salute you for this, to disclose that to defense counsel. Correct. What do we make of that? That happened three months after the hearing. The substance of the communication did not indicate any bias. The substance of the communication indicated the Court's concern regarding the restitution. And then you have the hearing. The judge denied this conversation at first, I gather. That's correct. Then when it came to light that it really did occur, he got angry and banished you from his court forever? That's correct. What do we make of that? That does not indicate bias. That does not affect the sentence. That does not indicate that the sentence is unconstitutional. What should we do about that? What would you have us do about that? I would have you do nothing. That doesn't seem like a satisfactory way to resolve that kind of issue to me. What happened to the restitution? Is that now a dead letter? In the government's view, yes. So as a result of this, the government basically got fleeced out of a half-million dollars of restitution it should have had? The government stipulated to the restitution amount based upon its understanding of the actual tax loss. Both sides agreed it would be $500,000 approximately? That's correct. And because of the judge's behavior, that just got lost, apparently lost. This is a criminal case, not a civil tax audit. The IRS remains free to conduct a civil tax audit. You're talking about the criminal restitution. That's just lost in space. The restitution was paid, and the restitution was agreed to by the government and the defendant. Was it paid? I'm sorry. Yes, it was. Oh, okay. I thought you said it was not collected. I did not. If I did, I was unclear. I'm sorry, Your Honor. The restitution was ordered and paid. The restitution was not ordered, but the defendant made a payment to the government that covered the agreed amount of the restitution. I got you. Okay. And consequently, it's the government's view now that that's been done, that the restitution is paid. It's paid. It's paid. Correct. The bias or prejudice according to the Supreme Court in Lightkey connotes an unfavorable disposition or opinion that is somehow wrongful or inappropriate. That's not been shown here. Let me say what I see this to be. Excuse me. What the judge's bias was, he felt that you undercharged this crime. Because you allowed the charge to be to an information, to one count, and he felt that that resulted in an undercharge. He also felt, and I think this is true of many judges, that frequently white-collar crime is way undercharged in comparison to regular criminal matters. For example, bank robbery. That's not an unusual view among judges, I think. And then he felt that the restitution that was stipulated to was too low. Now, I don't know that that's a true bias. It's not a bias against the individual. It may be a bias against how the government got where it got more than against the individual. But that's how I see the judge's view of this matter. And though he talks a great deal, as you know, forever, I think that there was no real problem until he got on the phone, apparently, accidentally with you. So that's my view of the bias in this case. Do you see it differently? No, I do not, Your Honor. I see it exactly the same. The government's belief that a stiff criminal sentence in a white-collar case is entirely appropriate. Indeed, it's entirely consistent with the 3553 factors. The comparison with a bank robber who just happens to walk into a bank unarmed, put a note on the table, walk out with $500, and can face over 40 months, as compared with a white-collar criminal who engaged in behavior over a five-year period, underreporting over 72 percent of his gross receipts, $3 million, to walk away with probation. To make that determination that it would be unjust to have those results is what 3553 requires, to take into account the severity of the crime, the effect of deterrence, the effect of the seriousness of the offense. And so the judge did exactly what he was supposed to do under 3553. As this Court stated last week, a dedication to upholding the law or a determination to impose severe punishment within the limits of the law upon those found guilty of a particular offense is ordinarily insufficient to require a recusal. You may want to give the cite if the counsel wants to check it. That's United States v. Johnson and Heinemann, issued by this Court on July 6th of just last week. I got the impression that when the judge got on the phone, it wasn't an accident. He didn't pick up the phone by mistake. In fact, he engaged you in a conversation about what was wrong with your stipulation, and you didn't calculate costs of goods sold, and you had some other problem with what you were doing. Is my understanding of that correct? I can't speak for the judge, Your Honor. I heard what I heard, and the record reflects what I heard. Do you have any reason to believe he thought he was talking to somebody else? No, I do not. Are you still banned from this Court? I've not seen anything that indicates otherwise. Okay. Anything else that you wanted to add, Mr. Preeby? No, Your Honor. Just at the end of the day, the defendant received a just sentence that was not unconstitutional, and this Court should dismiss the appeal. Thank you, sir. Mr. Barrish, you've got about a minute and change left. I'd better talk faster. Before too long, I would like to bring to the Court's attention another case that was decided concerning appeal waivers in the Second Circuit. Again, it's a July 6th case, and I'm sorry I didn't go through the procedure of writing the letter. It's U.S. v. Woltman, W-O-L-T-M-A-N-N, Second Circuit Docket Number 10-413, dealing with an appeal waiver and whether it was effective in somewhat similar circumstances. Namely, there was a plea agreement which basically said that there was a waiver if the sentence was 27 months or less. This is a tax case, by the way. And the judge sentenced him to 18 months, but there was also a 5K1.1. You know, Mr. Barrish, your own rebuttal. Okay. How is the other side going to respond to the new information you're presenting now? He's through. He made his presentation and he's finished. I understand, but, Your Honor, he cited a case. I wouldn't have even brought it up, but for the fact that he did similarly. Let me talk about the 3553 factors. I'm not criticizing you for that. All I'm suggesting to you is when you're here on rebuttal and you're citing new material. Now, if this is strictly in rebuttal, it's appropriate to do it. And is that what you – is that your position? If this is strictly rebutting something he cited? I wouldn't so – go so that. I wouldn't think so. Yes. I wouldn't think that. Let me then go to the substance of what he said. You're just running out of time. Make your point quickly, if you would, and then. The only thing is that this judge did not even do a 3553 factor analysis. He did not discuss our objections to the PSR. He did not go through an analysis of any way whatsoever with the various factors under 3553 and did not give this Court any basis for deriving that he did. Thank you. Mr. Parrish, thank you. Mr. Breebe, thank you also. The case disargued is submitted. Thank you, Your Honor. Thank you, gentlemen. 0650623, United States v. Hawk. Each side will have 15 minutes.
judges: Farris, Hall, Silverman